IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

T.L.S.,[1]

                    Plaintiff,

vs.                                          Case No. 20-2110-SAC

ANDREW SAUL,
COMMISSIONER OF SOCIAL
SECURITY ADMINISTRATION,

                    Defendant.

## MEMORANDUM AND ORDER

On February 28, 2017, plaintiff filed applications for social security disability insurance benefits and for supplemental security income benefits. The applications alleged a disability onset date of February 21, 2017.  The applications were denied initially and on reconsideration.  An administrative hearing was conducted on October 31, 2018.  The administrative law judge (ALJ) considered the evidence and decided on January 2, 2019 that plaintiff was not qualified to receive benefits.  This decision has been adopted by defendant.  This case is now before the court upon plaintiff's request to reverse and remand the decision to deny plaintiff's applications for benefits.

---

[1] The initials are used to protect privacy interests.

I.   STANDARD OF REVIEW

     To qualify for disability benefits, a claimant must establish that he or she was "disabled" under the Social Security Act, 42 U.S.C. § 423(a)(1)(E), during the time when the claimant had "insured status" under the Social Security program.  See Potter v. Secretary of Health & Human Services, 905 F.2d 1346, 1347 (10th Cir. 1990); 20 C.F.R. §§ 404.130, 404.131.  To be "disabled" means that the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. § 423(d)(1)(A).

     For supplemental security income claims, a claimant becomes eligible in the first month where he or she is both disabled and has an application on file.   20 C.F.R. §§ 416.202-03, 416.330, 416.335.

     The court must affirm the ALJ's decision if it is supported by substantial evidence and if the ALJ applied the proper legal standards.   See Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009).   "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Biestek v. Berryhill, 139 S.Ct. 1148, 1154 (2019)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)).   This standard is "not high," but it is "more than a scintilla."   Id.

(quoting Consolidated Edison, 305 U.S. at 229).   It does not

require a preponderance of the evidence.  Lax v. Astrue, 489 F.3d

1080, 1084 (10th Cir. 2007).  "Evidence is insubstantial if it is

overwhelmingly contradicted by other evidence."  O'Dell v.

Shalala, 44 F.3d 855, 858 (10th Cir. 1994).  The court must examine

the record as a whole, including whatever in the record fairly

detracts from the weight of the defendant's decision, and on that

basis decide if substantial evidence supports the defendant's

decision.  Glenn v. Shalala, 21 F.3d 983, 984 (10th Cir. 1994)

(quoting Casias v. Secretary of Health & Human Services, 933 F.2d

799, 800-01 (10th Cir. 1991)).   The court may not reverse the

defendant's choice between two reasonable but conflicting views,

even if the court would have made a different choice if the matter

were referred to the court de novo.  Lax, 489 F.3d at 1084 (quoting

Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)).

II.   THE ALJ'S DECISION (Tr. 16-28).

There is a five-step evaluation process followed in these

cases which is described in the ALJ's decision.   (Tr. 17-18).

First, it is determined whether the claimant is engaging in

substantial gainful activity.  Second, the ALJ decides whether the

claimant has a medically determinable impairment that is "severe"

or a combination of impairments which are "severe."  At step three,

the ALJ decides whether the claimant's impairments or combination

of impairments meet or medically equal the criteria of an

3

impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.
Next, the ALJ determines the claimant's residual functional
capacity and then decides whether the claimant has the residual
functional capacity to perform the requirements of his or her past
relevant work.  Finally, at the last step of the sequential
evaluation process, the ALJ determines whether the claimant is
able to do any other work considering his or her residual
functional capacity, age, education and work experience.

In steps one through four the burden is on the claimant to
prove a disability that prevents performance of past relevant work.
Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006).  At step
five, the burden shifts to the Commissioner to show that there are
jobs in the economy for persons with the claimant's residual
functional capacity.  Id.  In this case, the ALJ decided that there
were jobs in the economy that plaintiff could perform with his
residual functional capacity.

The ALJ made the following specific findings in her decision.
First, plaintiff met the insured status requirements for benefits
through December 31, 2021.  Second, plaintiff engaged in
substantial gainful activity from July 1, 2017 to January 16, 2018.
Third, plaintiff has the following severe impairments:
degenerative disc disease, degenerative joint disease, migraine
headaches, and obesity.  Fourth, plaintiff does not have an
impairment or combination of impairments that meet or medically

equal the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Fifth, plaintiff has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. §§ 404.1567(c) and 416.967(a) except that:  plaintiff should never climb stairs, ramps, ladders, ropes or scaffolds; he can occasionally balance and stoop but never kneel, crouch or crawl; he should be allowed to alternate sitting and standing positions up to every 40 minutes; he should be allowed a cane for ambulation; he should perform no pushing or pulling with the upper or lower extremities; and he should avoid exposure to extreme cold, excessive wetness, excessive vibration, unprotected heights, and hazardous machinery. Sixth, the ALJ concluded that plaintiff could not perform his past relevant work as a welder.  Finally, the ALJ determined that, considering plaintiff's age (40 years), education, work experience and residual functional capacity (RFC) that there are jobs that exist in significant numbers in the national economy he can perform, such as ampoule sealer, patcher, and final assembler. The ALJ relied in part upon vocational expert testimony for the last two findings.

III.  THE DECISION TO DENY BENEFITS SHALL BE AFFIRMED.

Plaintiff's brief lists two questions:  1) whether substantial evidence supports a finding that plaintiff's condition does not meet the criteria for a listed impairment at Listing 1.04; and 2) whether the ALJ erred in failing to develop the record or

provide appropriate weight to the opinions of Dr. Paulsen and Dr. Radhi.  Other issues are included within the discussion of these questions.  The court has carefully reviewed plaintiff's arguments and has determined that the decision to deny benefits should be affirmed as explained below.

    A. <u>Listing 1.04</u>

    Plaintiff has been diagnosed with severe spinal stenosis and neurogenic claudication, or compression of the nerve, around L4-L5.  (Tr. 404 & 406).  Social Security regulations list certain impairments, any of which is sufficient, at step three to justify a disability finding.  Plaintiff states:  "In this case, Plaintiff must show lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic non-radicular pain and weakness, and resulting in inability to ambulate effectively."  Doc. No. 9, p. 13.  This corresponds with Listing 1.04C.[2] 20 C.F.R. Pt. 404, Subpt. P, App.1, § 1.04C.  The "inability to ambulate effectively" is defined as:

> (1) Definition. Inability to ambulate effectively means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain,

---

[2] Under Listing 1.04C, an individual is presumptively disabled if he or she has, among other conditions, spinal stenosis or degenerative disc disease "resulting in compromise of a nerve root . . . or spinal cord" with "[l]umbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b."

> or complete activities. Ineffective ambulation is
> defined generally as having insufficient lower extremity
> functioning (see 1.00J) to permit independent ambulation
> without the use of a hand-held assistive device(s) that
> limits the functioning of both upper extremities. . .
> (2) To ambulate effectively, individuals must be capable
> of sustaining a reasonable walking pace over a
> sufficient distance to be able to carry out activities
> of daily living. They must have the ability to travel
> without companion assistance to and from a place of
> employment or school. Therefore, examples of ineffective
> ambulation include, but are not limited to, the
> inability to walk without the use of a walker, two
> crutches or two canes, the inability to walk a block at
> a reasonable pace on rough or uneven surfaces, the
> inability to use standard public transportation, the
> inability to carry out routine ambulatory activities,
> such as shopping and banking, and the inability to climb
> a few steps at a reasonable pace with the use of a single
> hand rail. The ability to walk independently about one's
> home without the use of assistive devices does not, in
> and of itself, constitute effective ambulation.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 1.00B2b.

The ALJ stated that he considered Listing 1.04 and acknowledged a diagnosis confirming "some spinal abnormality," but concluded that Listing 1.04 was not met because "the spinal impairments result in no compromise or compression of a nerve root or the spinal cord with the neurological manifestations outlined in that listing." (Tr. 21). He discussed some of the evidence that supports this finding later in his decision. Plaintiff contends that substantial evidence does not support this finding.

The rationale for the ALJ's finding that plaintiff did not have a Listing 1.04 impairment, appears to be that plaintiff did not exhibit the "neurological manifestations," i.e., the weakness

7

and ambulatory inability, required to meet the requirements of Listing 1.04.[3]   The ALJ noted that plaintiff exhibited normal strength in all limbs on September 21, 2016 (Tr. 23 referring to Tr. 441); that in February 2017 he was ambulating without assistance (Tr. 23 referring to Tr. 417)[4]; that an examination in May 2017 showed plaintiff in no acute distress, with normal strength in all limbs and negative straight leg raises (Tr. 23 referring to Tr. 478-79); and that a July 2018 examination observed that plaintiff had 4/5 strength in the lower extremities and that his gait was independent (Tr. 23 referring to Tr. 493-95). Moreover, the ALJ gave significant weight to the opinions of two state agency physicians whose review of the record does not support the finding of a listed disability.  (Tr. 25).

Plaintiff cites his own testimony or subjective statements, and isolated examination findings as contrary to the ALJ's decision.   This evidence, however, does not overwhelmingly contradict the evidence cited by the ALJ.   The ALJ found that

_____

[3] The ALJ expressly mentioned that plaintiff did not exhibit an inability to ambulate effectively from a joint dysfunction as required by Listing 1.02. (Tr. 21).  Although the ALJ did not expressly mention plaintiff's ability to ambulate with regard to Listing 1.04, it is logical to assume that the ALJ considered this factor.

[4] The ALJ cited Exhibit 1F/19-20 for this finding, but it appears that the correct citation would be Exhibit 1F/21.  As defendant points out, there are other findings of relatively normal strength, independent gait or no ambulatory aid.  E.g., Tr. 506 (ambulates without assistance or difficulty in June 2018); Tr. 520 (normal gait, no ambulatory aid in March 2018); Tr. 526 (same January 2018); Tr. 531 (no muscle weakness in January 2018); Tr. 532 (no gross weakness, gait stable to ambulation in January 2018); Tr. 536 (normal gait, no ambulatory aid in January 2018); and Tr. 495 (not a "whole lot" of weakness in July 2018).

plaintiff's hearing testimony regarding activities of daily living, plaintiff's March 2017 function report, and plaintiff's rejection of some of his doctors' pain management options provided support for his determination that plaintiff could perform some sedentary employment and therefore was not presumptively disabled.[5] (Tr. 25-26).

B. Insomnia

Plaintiff asserts at pages 16-17 of his opening brief that the ALJ did not consider plaintiff's insomnia when developing plaintiff's RFC.   The court disagrees.   The ALJ discussed plaintiff's sleeping complaints at Tr. 22 as part of his RFC analysis.   The court further notes that plaintiff attributes his insomnia to his back pain (Tr. 50), which is the major subject of the RFC discussion.   The court finds no grounds in plaintiff's insomnia argument to reverse the decision to deny benefits.

C. Activities of daily living

Plaintiff contends that the ALJ improperly evaluated the evidence of plaintiff's activities of daily living (ADLs).   Doc. No. 9 at p. 17-18.   Plaintiff does not contend that it was improper for the ALJ to consider plaintiff's ADLs when making decisions

_____

[5] Plaintiff disputes the significance of these factors because of barriers to getting treatment or use of different treatment options.   These arguments, however, ask the court to reweigh the evidence contrary to the court's mandate when reviewing the administrative record in this sort of case.   See Allman v. Colvin, 813 F.3d 1326, 1333 (10th Cir. 2016); Hamilton v. Sec'y of Health & Human Servs., 961 F.2d 1495, 1499 (10th Cir. 1992).

regarding whether Listing 1.04 criteria were satisfied and whether

plaintiff retained the RFC to perform some sedentary employment.

Rather, plaintiff argues that the ALJ misinterpreted the evidence

of plaintiff's ADLs.

The ALJ found that plaintiff reported activities consistent

with sedentary capacity.  (Tr. 25).  The ALJ said:

> [Plaintiff] denied any difficulty in his ability to
> independently perform personal care tasks such as
> bathing, dressing, personal hygiene, feeding and
> toileting.  He testified he could dress and bathe
> himself, although it is "tough" to do so.  The
> [plaintiff] has asserted that this daily routine
> includes taking care of the younger children [ages 2 and
> 4] while his wife works.  He reported he can get the two
> older children [ages 5 and 9] ready for school, and then
> during the day, he feeds, diapers, and changes clothes
> for the other two children.  He reports being able to
> perform speech therapy exercises with one of the
> children.  He testified he attends school functions
> sometimes, sitting in the back row so he can get up and
> move around. . . . He reported having a service dog and
> being able to feed her and take her outside, despite his
> reported standing and walking limitations.  He can cook
> meals and does so daily, using a crockpot, stove, oven,
> or microwave.  He reported his wife does the household
> cleaning and yard work.  He reported he does not drive
> and needs help getting out of the car as a passenger at
> times.  He reports shopping for groceries and other
> household essentials 2 to 3 times a month for 3 to 4
> hours at a time.

(Tr. 25-26).  The ALJ observed that plaintiff's wife completed a

second function report for plaintiff two months after plaintiff

completed the first report and that the second report indicated a

"highly divergent" or "very different" and higher degree of

10

disability.[6]   (Tr. 25 and 26).   The second report stated that

plaintiff was unable to care for children or pets, and could not

cook.   (Tr. 319-20).   Contrary to plaintiff's claim (Doc. No. 9,

p. 19), it is not a "gross overstatement" for the ALJ to say that

the second function report alleges a very different level of

capacity.   Both reports indicated difficulties with personal care,

which  the  ALJ,  quoting  plaintiff's  testimony,  appeared  to

acknowledge was "'tough' to do" for plaintiff.[7]   (Tr. 25).   The

ALJ concluded that the second report could not be reconciled with

the first report and plaintiff's hearing testimony.[8]   (Tr. 26).

Because  of  the  "high  inconsistency"  and  "lack  of  explanation

between the reports," the ALJ gave the wife's statement "little

weight."   (Tr. 25).

     The court finds that the ALJ properly considered the evidence

regarding plaintiff's ADLs in making his decisions regarding

Listing 1.04 and plaintiff's RFC.   See Allman, 813 F.3d at 1333

(ALJ  entitled  to  resolve  evidentiary  conflicts);  Newbold  v.

Colvin, 718 F.3d 1257, 1267 (10th Cir. 2013)(may consider ADLs in

---

[6] At Tr. 26, the ALJ refers to the second function report as if it were completed
by plaintiff instead of plaintiff's wife.  (Tr. 26).  We do not find that this
error is material to the ALJ's decision and analysis.
[7] The ALJ was referring to the hearing transcript where plaintiff was asked if
he could bathe and dress himself and plaintiff replied, "It's tough but yeah."
(Tr. 45).
[8] In his hearing testimony, plaintiff indicated with regard to child care:
"I'll get up and run over and go - - like, walk over and go take care of this
or I'll get them something out of the fridge to drink or get them something to
eat.  I have bar stools that I have in my kitchen that usually if I'm cooking,
that's - - I'll sit on it or I'll stand in front of it."  (Tr. 45).

determining credibility of pain testimony); cf., <u>Trujillo v.</u>
<u>Commissioner, SSA</u>, 2020 WL 4200128 *5 (10th Cir. 7/22/2020)(ability
for self-care and care of daughter may be considered as one factor
supporting RFC analysis); <u>Wilson v. Astrue</u>, 602 F.3d 1136, 1146
(10th Cir. 2010)(upholding negative credibility finding on basis
of ADLs involving child care and ability for self-care); <u>Hill v.</u>
<u>Chater</u>, 1996 WL 41853 *2 (2/2/1996)(engagement in limited
activities may not establish ability to work but may be considered
along with other relevant evidence); <u>Gossett v. Bowen</u>, 862 F.2d
802, 807 (10th Cir. 1988)(inability to work pain-free is not
sufficient reason to find a claimant disabled).

The conflict between the two function reports and any
differences between other sources as to plaintiff's ADLs are issues
for the ALJ to evaluate. The court does not find that the ALJ's
characterization of the evidence is so faulty or inaccurate that
his findings lack substantial support.[9] The evaluation of
plaintiff's ADLs was one factor among others (including medical
opinions from state agency physicians) supporting the ALJ's RFC

---

[9] The court agrees with plaintiff that the ALJ mischaracterized plaintiff's
function report (Tr. 291-92) when he stated at Tr. 25 that plaintiff denied any
difficulty in his ability to perform personal tasks. The court does not find
this to be reversible error because substantial evidence supports the RFC
findings. See <u>Perez Torres v. Secretary of Health and Human Services</u>, 890 F.2d
1251, 1255 (1st Cir. 1989)(misreading of record regarding claimant's reporting
of a mental condition is harmless upon examination of entire record). Also,
the ALJ immediately followed the misstatement with an acknowledgment of
plaintiff's testimony that he could dress and bathe himself, although it was
tough to do so. This corresponds with the function report where plaintiff
commented that it was hard to put clothes and shoes on, and hard to stand long
enough to shave and shower. (Tr. 291).

determination which significantly restricted plaintiff's capacity
for substantial employment.  The court finds no legal grounds to
disturb his decision upon the record and arguments presented here.

    D. Headaches and anxiety

    Plaintiff alleges that the ALJ failed to take into account
all of plaintiff's "not severe" impairments, such as anxiety and
headaches, in making the RFC finding.  Doc. No. 9, p. 22.  The
ALJ's decision, however, categorizes plaintiff's migraine
headaches as a "severe" impairment (Tr. 19) and discusses their
impact upon plaintiff's functionality at Tr. 26.  The ALJ found
that plaintiff's "alleged headache frequency and severity is
contrary to his hearing testimony, and such inconsistency is likely
explained by improved treatment of his migraine headaches."  (Tr.
26).  Plaintiff testified that he has migraines four or five times
a month - - worse-case scenario he has to lay down and other times
he can take a pill and usually the headache goes away after about
an hour.  (Tr. 42).  Plaintiff also testified that lower back pain
was the problem which kept plaintiff from working.  (Tr. 40).  The
ALJ determined that his headaches were adequately controlled.  The
court finds that the ALJ's determination is supported by
substantial evidence.

    The ALJ's RFC discussion also covered anxiety.  The ALJ
discounted the severity of plaintiff's anxiety, noting that
plaintiff has not had mental health treatment and that he takes

Cymbalta which helps his anxiety. (Tr. 22). The court finds no error in the ALJ's consideration of plaintiff's anxiety.

E. Dr. Paulsen

Plaintiff claims that the ALJ improperly weighed opinions given by one of plaintiff's treating doctors, Dr. Leif Paulsen. On February 28, 2017, Dr. Paulsen described plaintiff's back problems and stated:

> Since [September 2016 plaintiff's] pain has only worsened to where he has a difficult time either sitting or standing for prolonged periods of time due to the pain of the lower back which radiates into both of his legs. He also suffers from numbness of both of his legs bilaterally. . . .
> Given his current level of pain, numbness and anatomical abnormalities with his spine it is my recommendation that he be placed on permanent disability for the next 12 months at which time we can reassess his condition.

(Tr. 404). The ALJ gave this opinion "little weight" because it included no specific functional limitations and because the disability recommendation represented a conclusion regarding an issue reserved for the Commissioner's determination. (Tr. 24). The court agrees with defendant that this is a reasonable evaluation of Dr. Paulsen's February 28, 2017 opinion. See Chapo v. Astrue, 682 F.3d 1285, 1289 (10th Cir. 2012)(ALJ properly gave no weight to a conclusory form lacking functional findings); Castellano v. Secretary of Health and Human Services, 26 F.3d 1027, 1029 (10th Cir. 1994)(treating physician's opinion of total

14

disability is not binding on the Secretary in making ultimate
determination of disability).

On June 8, 2017, Dr. Paulsen completed a physical residual
functional capacity questionnaire.  (Tr. 482-484).  He noted that
plaintiff exhibited constant low back and bilateral leg pain and
numbness with decreased leg strength and sensation.  Further, he
listed that:  plaintiff could sit or stand for 15 minutes at one
time; he could sit or stand/walk for two hours or less in an 8-
hour working day; he needed to shift positions at will; he needed
daily unscheduled breaks during a working day; he could
occasionally lift 10 pounds in a competitive work situation; he
had significant limitations with reaching handling or fingering;
and he would likely be absent from work more than four days per
month.  Id.

The ALJ gave this opinion "very limited partial weight as to
only the lifting and position shifting." (Tr. 24).  The ALJ stated
that there was no objective evidence to support the need for extra
breaks or any upper extremity limitations and "no supporting
evidence . . . for the disabling limitations set forth."  Id.

A treating physician's medical opinion must be evaluated
using a two-step inquiry.  Krauser v. Astrue, 638 F.3d 1324, 1330
(10th Cir. 2011).  First, the ALJ must decide whether the opinion
should receive controlling weight.  Id.  An opinion deserves
controlling weight if "it is well-supported by medically

15

acceptable clinical or laboratory diagnostic techniques and is not

inconsistent with other substantial evidence in the record." Id.

If the opinion is not well-supported or if it is inconsistent with

other substantial evidence in the record, controlling weight

should be denied. Id. Second, if not given controlling weight,

a treating source's opinion is still entitled to deference and

must be weighed using all the factors provided in 20 C.F.R. §§

404.1527 and 416.927. Langley v. Barnhart, 373 F.3d 1116, 1119

(10th Cir. 2004). These factors are:

> (1) the length of the treatment relationship and the
> frequency of examination; (2) the nature and extent of
> the treatment relationship, including the treatment
> provided and the kind of examination or testing
> performed; (3) the degree to which the physician's
> opinion is supported by relevant evidence; (4)
> consistency between the opinion and the record as a
> whole; (5) whether or not the physician is a specialist
> in the area upon which an opinion is rendered; and (6)
> other factors brought to the ALJ's attention which tend
> to support or contradict the opinion.

Id. (internal quotation marks omitted).

The ALJ's opinion clearly states that Dr. Paulsen's June 2017

opinion was not given controlling weight because it lacked

supporting objective evidence and was not consistent with other

evidence, including other opinion evidence, in the record. This

included the 2017 opinions of State agency medical consultants Dr.

William Fowler and Dr. Pat Chan (who reviewed "the medical evidence

of record to date" (Tr. 25)), and medical evidence showing "the

claimant's retained strength and neurologic functioning support a

16

sedentary capacity with the ability to shift standing and sitting positions and ability to use a cane as needed." (Tr. 25). The ALJ's decision also described a physical examination by Dr. Paulsen showing normal neurologic functioning and ambulating without assistance and the findings of Dr. Reintjes showing normal strength in all extremities and in no acute distress. (Tr. 23 referring to Tr. 478-80).

Upon review, the court finds that the ALJ did not commit error in his evaluation of the opinions given by Dr. Paulsen. While Dr. Paulsen's opinion may find support in portions of the record, the ALJ's decision to give the opinion limited weight is adequately backed by the record.

F. Dr. Radhi

Dr. Fatma Radhi completed a form which describes plaintiff's work abilities. (Tr. 570-72). The ALJ gave the opinion no weight because there was no evidence of treatment or examination from Dr. Radhi. (Tr. 25). Plaintiff alleges this was improper because the ALJ did not act to develop the record in this regard.

Defendant contends that plaintiff has the duty to submit evidence to the ALJ and to inform the ALJ of any evidence five days prior to the administrative hearing. See 20 C.F.R. § 404.935. Defendant further notes that plaintiff's counsel indicated the record was complete during the hearing before the ALJ. (Tr. 37).

17

Also, defendant asserts that there is little difference between the form completed by Dr. Radhi and the RFC formulated by the ALJ.

The Tenth Circuit has stated:  "we will not ordinarily reverse or remand for failure to develop the record when a claimant is represented by counsel who affirmatively submits to the ALJ that the record is complete."  Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008).  In Miller v. Astrue, 496 Fed.Appx. 853, 856 (10th Cir. 2012), the Tenth Circuit found no error when an ALJ rejected an outpatient counselor's opinion because no therapy notes from the counselor were supplied by the counselor's employer, and no objection was raised by the plaintiff at the administrative hearing.

In this case, the record had a substantial amount of evidence relating to the issues raised for the ALJ's decision.  The ALJ made a reasonable effort to decide those issues upon a record that plaintiff's counsel indicated was complete.  The court finds no reversible error in developing the record.

IV. CONCLUSION

For the above-stated reasons, the court affirms defendant's decision to deny plaintiff's application for social security benefits and shall dismiss this action to reverse the decision.

19

**IT IS SO ORDERED.**

Dated this 4th day of August, 2020, at Topeka, Kansas.

                    s/Sam A. Crow_____
                    U.S. District Senior Judge